FILED

2023 Mar-27  AM 11:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| CHAUNCEY G. JONES, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  3:21-cv-1296-LCB |
| | ) | |
| SHEFFIELD CITY SCHOOLS, *et al*. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Chauncey G. Jones, Jr., proceeding pro se, filed a complaint on September 28, 2021, alleging that the Defendants, Sheffield City Schools and its then-Superintendent Dr. Keith Davis, engaged in discriminatory conduct related to his employment.  Jones initiated the case using the Court's standard form for a pro se employment discrimination complaint, and checked the boxes indicating that his claims were being brought pursuant to Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §§ 2000c-2000e-17, and the Age Discrimination in Employment Act of 1967, codified at 29 U.S.C. §§ 621-634.  (Doc. 1, at 3-4). Jones also indicated that he was bringing his claims under "the Civil Rights Act of 1866 (Equal Protection)."  *Id*, at 4.  Jones checked the boxes indicating that the alleged discriminatory conduct includes unequal terms and conditions of his employment and retaliation.  *Id*.  He also alleged that the discriminatory conduct

included "provid[ing] favorable work schedule to white employees."  *Id.*  Before the Court is the Defendants' motion for summary judgment and motion to strike Jones's response to that motion.  (Docs. 17 and 25).  For the reasons that follow, the motion for summary judgment is due to be granted and Jones's case dismissed with prejudice.  The motion to strike is moot.

## I.  **Background and Undisputed Facts**

Jones began working for the Sheffield City Schools in the summer of 2000 as an "ISS/alternative school teacher."  (Plaintiff's deposition, at 48)[1].  The precise duties of "ISS teacher" do not appear in the record, but the Court understands "ISS" to refer to in-school suspension where students with disciplinary issues are separated from other students but allowed to remain in the school.   In his deposition, Jones explained that "Alternative School" fulfilled a similar purpose but was more of a long-term placement.  *See also* (Doc. 18-1, at 112) (job description of Alternative Education Teacher).   He remained in that position until 2017 when he applied for and was hired as an "Alternative Education/Attendance Clerk."[2]  *Id.* at 117, 124.  His new duties as Attendance Clerk required him to,

[1] The transcript of Jones's deposition is contained in the record at (Doc. 18-1, at 2-78).  The citations to page numbers in the Plaintiff's deposition refer to the page numbers assigned by the court reporter in the deposition transcript as opposed to the page numbers assigned by the Court's CM/ECF system.

[2] In his deposition, Jones described a period of time beginning in the spring of 2016 in which his job description was changed such that he was required to split his time between his typical duties and teaching two high school history classes.   Jones filed EEOC complaints regarding this change.   However, because the present complaint was filed in 2021, any allegations relating to

among other things, contact parents of students with serious attendance issues and, in certain cases, conduct home visits.

When Jones began his position as "Alternative Education/Attendance Clerk," the Alternative School classroom was physically located at the Sheffield City Schools central office.  When the Defendant, Dr. Keith Davis was hired as Superintendent in 2019, he decided to move the program, and thus Jones's classroom, to Sheffield High School and did so in August of that year.  On August 26, 2019, Jones filed a written grievance to the School Board against Dr. Davis. (Doc. 1, at 13).   Around the same time, Jones's sister-in-law[3], who was also employed by the Sheffield City Schools, filed a grievance as well.  The Board hired a person outside the school system, Belinda Williams[4], to investigate the allegations in both grievances.

Jones's written grievance listed the following complaints against Dr. Davis:

-Intentional refusal to assist me by assigning me PLU[5] work in sufficient time.

---

that time period would be outside the relevant statute of limitations.  The allegations are mentioned only as necessary for context.

[3] Jones's sister-in-law is not a party to this case and is mentioned only because the Board cited her grievance as part of the reason it decided to hire an outside investigator.  Jones disputes that this was the sole reason for hiring an outside investigator.

[4] Williams, an African-American female, was formerly employed as the Human Resources Director and Compliance Director for the Huntsville City Schools.

[5] Jones described "PLU work" as a form of continuing education required to maintain certain certificates related to his career.  It is undisputed that Jones successfully completed all his PLUs during the relevant time period, and his certifications were not affected.

-Failure to notify me of transfer from SBOE [Sheffield Board of Education] office to SHS [Sheffield High School].

-Assigned me a classroom that was substandard and not equal to other teachers in the school system (aesthetics).

-Sent harassing and intimidating email concerning my schedule and location.

-Refused to provide any of the school district resources to assist in my relocation from SBOE to SHS (refrigerator, chairs, portable water cooler, file cabinets etc.)

-Adverse schedule change (from 7am-230pm approx. to 715am - 330pm approx.)

-Complications to master schedule, phone service, code to change Fob key entry.

-Suspect my transfer is due to filling a racial quota (only black male teacher at either SHS and SJHS [Sheffield Junior High School]).

-My sister-in-law are currently experiencing similar problems.

-I am certain her harassment, retaliation and discrimination is directly connected to me.

-I am also certain there are discrimination practices in place to minimize black employment, promotion and retention.

-I have concluded that Dr. Davis is responsible for disparate work environment for myself and my sister-in law.

-By making certain changes to accommodate certain white employees.

-Excessive transfers (Chauncey Jones) over a period of 5 years (6).

(Doc. 18-1, at 95).  Williams conducted an investigation into each of these

grievances and ultimately prepared a report on October 10, 2019, finding no

4

discrimination, disparate work environment, or harassment.  (Doc. 18-4, at 27).
She did, however, find that Dr. Davis should have provided Jones with written
notice of his transfer from the central office to the high school and recommended
that the Board put in place procedures to ensure proper notice in the future.  *Id.*
Williams did not find any discriminatory motive in the transfer.  *Id.*

On June 10, 2021, Jones filed a complaint with the Equal Employment
Opportunity Commission ("EEOC") alleging that he was moved from the central
office to Sheffield High School because of his race; that he was improperly
required to cover the duties of a 28-year-old white teacher during the 2020-21
school year; that he was required to work in the classroom of a teacher who had
been quarantined because of COVID without the classroom being disinfected as he
requested; that he was later required to quarantine with pay because of a COVID
exposure while other teachers were not so required; and that he was not selected to
teach summer school based on his race.  (Doc. 18-1, at 100-01).  The EEOC
dismissed the charge on June 29, 2021, and issued a right-to-sue letter.  *Id.* at 109.

On September 28, 2021, Jones filed the instant complaint.  Although the
allegations are somewhat disjointed, the Court will afford Jones a certain amount
of leniency given his pro se status.  *See Tannenbaum v. United States*, 148 F.3d
1262, 1263 (11th Cir. 1998) ("Pro se pleadings are held to a less stringent standard
than pleadings drafted by attorneys and will, therefore, be liberally construed.").

5

The Court interprets Jones's complaint to allege as follows: that Dr. Davis had both race- and age-based discriminatory motives in transferring the alternative school program, and thus Jones, from the Board's central office to Sheffield High School without providing written notice; that the transfer was retaliatory; that Dr. Davis harassed him "in numerous forms;" that the high school principal interfered with Jones's and Jones's students' schedules; that his students were subjected to academic harm "related directly to [Jones];" that white students and their parents made unfounded complaints against him; that the Defendants engaged in "deception in job description" and "violations of the terms of the position [he] received in May 2017;" that the transfers and changes in job description were because of "systemic racism;" that he lost pay by not being selected to teach summer school, alternative school, Friday school, and Saturday school; and that his professional credentials are being devalued and unappreciated because of this discrimination.  According to Jones, he is "one of the five most qualified [teachers] in the school district" and should therefore be a 12-month employee instead of a 9-month employee.  For these alleged violations of his civil rights, Jones seeks compensatory and punitive damages in the amount of $875,930.00.

Jones also attached to his complaint a copy of the above-referenced EEOC charge and what appear to be documents that he attached to that charge.  In one

such document, Jones elaborates on the issue related to his transfer and claims that Williams's investigation was not fair.  (Doc. 1, at 11-12).

The Defendants moved for summary judgment on July 22, 2022.  (Doc. 19). Attached to their motion were sworn affidavits from Belinda Williams (Doc. 18-4) and three school officials: Dr. Davis (Doc. 18-3), Dr. Carlos Nelson, the current Superintendent of Sheffield City Schools (Doc. 18-2), and Stephanie Wieseman, the principal of Sheffield High School.  (Doc. 18-5).  Those affidavits and attached exhibits rebutted Jones's contentions and set forth the Defendants' reasoning for taking the various actions Jones complained about.  The Defendants also submitted Jones's deposition as an exhibit.  (Doc. 18-1).

Based on the Court's initial order, Jones's response to the motion for summary judgment was due August 12, 2022.  (Doc. 10).  On August 5, 2022, the Court granted Jones's motion for an extension of that deadline, and gave him until August 19, 2022, to file his response.  However, Jones did not file his response until September 22, 2022, over a month later, and did not request any further extensions.

The Court's initial order provides mandatory instructions regarding dispositive motion practice.  Specifically, the initial order notes that its instructions "*must* be followed explicitly" and that, "except for good cause shown, briefs and evidentiary materials that do not conform to" those requirements may be stricken.

(Doc. 10, at 15).  Noting that provision, the Defendants moved to strike Jones's untimely response.  However, given Jones's status as a pro se litigant, the Court will exercise discretion and consider his untimely response.

However, Jones's response did not address the substance of any of the Defendants' contentions.  Rather, he simply claims that two of the affidavits, those of Dr. Davis and Dr. Nelson, "are false and misleading."  (Doc. 22, at 2).  Jones then appears to attack the validity of Belinda Williams's investigation by claiming that Dr. Nelson also began an investigation but discontinued it at the Board's direction after finding evidence favorable to Jones's discrimination claim.  Jones claimed that Dr. Nelson obeyed the Board "in order to get the position of Superintendent of Sheffield City Schools."[6]  *Id.*  However, Jones did not say what those alleged favorable findings were.

He also made a series of somewhat confusing allegations about Dr. Nelson by claiming that he "tampered with [him] regarding providing false and misleading information as [his] employer."  *Id.*  Jones also claimed that he was harassed and intimidated; that Dr. Davis and another school administrator "were conspiring to assign students to Alternative School for the purpose of limiting [Jones's] movement during school hours;" that Dr. Nelson told him not to have contact with an unidentified white female educator; and that defense counsel, the Defendants'

---

[6] Dr. Nelson is the current Superintendent of Sheffield City Schools.  (Doc. 18-2, at 1).

witnesses, and the School Board conspired against him by hiring Dr. Nelson as the new Superintendent. He then cites two statutes that "may have [been] violated in [his] complaint." *Id.* Those statutes are 8 U.S.C. 1324(c), which involves the authority to arrest illegal aliens, and 18 U.S.C. § 201, which involves bribery of public officials. However, Jones does not elaborate on how either of those statutes may have been implicated in his case.

On October 17, 2022, Jones filed what appears to be an unauthorized sur-reply to the Defendants' reply in support of its motion for summary judgment. (Doc. 26). The Court's initial order provides that "[s]ur-replies are not permitted without leave of court." (Doc. 10, at 15). Jones did not seek leave of Court before filing his sur-reply. However, given his status as a pro se litigant, the Court will exercise its discretion and consider the filing as a part of Jones's response.

But like his first response, this filing also fails to substantively address any of the Defendants' contentions. In Jones's sur-reply, which he titled "Plaintiff's Motion to Deny Summary Judgment," he briefly discussed his unsuccessful attempts to obtain legal counsel and generally stated that the Defendants' contentions are without merit. He also reiterated his complaint about being transferred to the high school without written notice and stated that "the basis of racial discrimination exist in the Racial Discrimination Complaint." (Doc. 26, at 2). This appears to refer to the written grievance he filed against Dr. Davis, which

he claimed to have read in its entirety at a school board meeting.  Jones again alleged that Dr. Nelson was the first official to begin a "crucial investigation" into his grievance and that Dr. Nelson's investigation "provide[d] significant evidence racial discrimination happened against [Jones] as a member of a protected class." *Id*. at 3.  He attached emails between him and Dr. Nelson that appear to schedule a meeting between the two men and to discuss resources that Jones requested for his classroom.  *Id*. at 9-12.  Jones then summarizes a conversation he allegedly had with Dr. Nelson regarding the investigation.  However, as in his first response, Jones did not say what any of these alleged favorable findings were.  Finally, he attached what appears to be a response addressed to the Board criticizing various aspects of Williams's investigation.  Nevertheless, nothing in the sur-reply directly addresses the Defendants' contentions.

## II. **Legal Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it

believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support

11

each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla.

1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

As to the substantive law in question, a plaintiff may generally establish a *prima facie* case of discrimination by showing that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he was subjected to adverse employment action; and (4) his employer treated similarly situated employees outside of the protected class more favorably. *Jefferson v. Burger King Corp.*, 505 Fed.Appx. 830, 833 (11th Cir. Jan. 29, 2013).

Once a plaintiff establishes a *prima facie* case, the employer may rebut the presumption of discrimination by articulating at least one non-discriminatory reason for its action. *Jefferson*, 505 Fed. Appx. at 833. Once the employer does so, the plaintiff must show that the proffered reason is pretext for discrimination. *Id*. The analysis is the same for both age- and race-based discrimination. *See Phillips v. Aaron Rents, Inc*., 262 F. App'x 202, 207 (11th Cir. 2008), citing *Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1060 (11th Cir.1994) and *Pennington v. City of Huntsville*, 261 F.3d 1262, 1269 (11th Cir.2001).

Similarly, for a plaintiff to prove a retaliation claims, he must first establish a *prima facie* case by proving the following elements: (1) he participated in protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between participation in the protected activity and the adverse

employment action.  *Brown v. City of Opelika*, 211 Fed. Appx. 862, 863 (11th Cir. Dec. 14, 2006).

Once a plaintiff establishes a *prima facie* case, the employer may rebut the presumption of retaliation by articulating at least one non-retaliatory reason for its action.  *Jefferson*, 505 Fed. Appx. at 833. Once the employer does so, the plaintiff must show that the proffered reason is pretext for discrimination.  *Id*.

III. **Discussion**

All of Jones's claims fail for several reasons.  First, as will be discussed below, it is questionable whether any of his allegations establish a *prima facie* case of discrimination or retaliation.   But even if they did, the Defendants have articulated legitimate, nondiscriminatory reasons for each of the alleged improper actions, and Jones failed to point out anything in the record to rebut them or even suggest that they were a pretext for discrimination.

As to whether Jones has made out a *prima facie* case of discrimination or retaliation, the Court notes that it does not appear Jones suffered any adverse employment actions related to any of his claims.  Further, the affidavits attached to the Defendants' motion for summary judgment provide legitimate, nondiscriminatory reasons for all of the complained-of actions.  As noted above, Jones's responses to those assertions do not address any of the Defendants' contentions.   Thus, the proffered reasons are essentially unchallenged.

14

Accordingly, those affidavits, along with Jones's own deposition, demonstrate that there is no genuine issue of material fact, and that summary judgment is due to be granted in favor of the Defendants.  The Court will address each of Jones's claims in turn.

> **A. Jones failed to establish a *prima facie* case of discrimination or retaliation relating to his transfer from the central office to the high school because he has shown no adverse employment action nor has he rebutted the Defendants' legitimate, nondiscriminatory reason for transferring him.**

As noted, Jones alleged that he suffered discrimination and retaliation when Dr. Davis transferred the Alternative School program, and thus Jones, from the Board's central office to Sheffield High School.  There is no dispute that Jones meets the first two elements of a prima facie case as to his race- and age-based discrimination claims: he is African American and was born in 1963.  Further, the Defendants do not dispute that he is qualified for his job.  However, Jones has not pointed to any evidence demonstrating that the transfer was an adverse employment action.

The Eleventh Circuit has held that "adverse employment actions include 'tangible employment actions,' which are those actions 'that affect continued employment or pay—things like terminations, demotions, suspensions without pay, and pay raises or cuts—as well as other things that are similarly significant standing alone." *Davis v. Legal Servs. Alabama, Inc*., 19 F.4th 1261, 1266 (11th

Cir. 2021), quoting *Monaghan v. Worldpay US, Inc*., 955 F.3d 855, 860 (11th Cir. 2020).  "To establish an adverse employment action, 'an employee must show a serious and material change in the terms, conditions, or privileges of employment ... as viewed by a reasonable person in the circumstances.'  Moreover, the 'asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment.'"  *Porterfield v. Soc. Sec. Admin*., No. 20-10538, 2021 WL 3856035, at *5 (11th Cir. Aug. 30, 2021), quoting *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001), overruled on other grounds by *Burlington Northern v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).

At the time of his deposition, Jones was still employed in the same capacity with the Sheffield City Schools, and he admitted in his deposition that his salary never decreased.  In fact, Dr. Davis alleged in his affidavit that Jones's pay has increased during the relevant time periods.  Although Jones alleged that the classroom he was moved to at the high school was substandard[7], he admitted in his deposition that the issues he identified were remedied within a few months.  (Plaintiff's deposition, at 153).  Jones also claimed that the transfer to the high school was a demotion because his supervisor changed from the Superintendent to the high school principal.

---

[7] In his deposition, Jones claimed that the room had water damage, a foul smell, and that the blinds were "folded", and the teacher's desk was old.  (Plaintiff's deposition, at 154).

However, Jones does not articulate how this change in supervisors was a demotion nor does he respond to Dr. Davis's contention that the transfer actually benefitted him because if gave him additional support from other teachers, a planning period, and eliminated the need for Jones to use his personal vehicle to shuttle his students' lunches from the high school to the central office. Jones's proffered reasons for his transfer being an adverse employment action are speculative at best and do not show any tangible adverse effect on his employment. Accordingly, Jones failed to make out a *prima facie* case of discrimination or retaliation regarding his transfer from the central office to the high school. To the extent Jones has argued that the lack of written notice is the discriminatory conduct, that argument fails for the same reasons.

The Defendants also articulated a legitimate, nondiscriminatory reason for the decision to transfer Jones from the central office to the high school. In his sworn affidavit, Dr. Davis explained the transfer as follows:

> I was concerned that the Alternative School students were not receiving sufficient subject matter or content specific instruction. While Chauncey Jones was a Social Studies teacher, there were no other content specific teachers located at the Central Office. Therefore, the other subject matter/content specific teachers would have to drive from Sheffield High School to the Central Office to teach the Alternative School students. I observed that the teachers were not always able to travel to the Central Office on a consistent basis. When they did, they lost classroom teaching time by having travel back and forth. Moreover, I believed that it was difficult to serve special needs students with Individualized Education Plans (IEP) at the Central Office when the special education teachers were

> based at the high school. Additionally, there is no cafeteria at the
> Central Office. Therefore, Chauncey Jones would have to travel to
> Sheffield High School to pick up food and bring it back to the Central
> Office for the students. Not only did this take away from Chauncey
> Jones' time with the students, but it also led to food being transported
> in a personal vehicle.

(Doc. 18-3, at 3-4).  Dr. Davis also specifically denied that Jones's age or race played a part in his decision.  The Court finds this to be a reasonable, legitimate, and nondiscriminatory reason for the transfer.  As noted above, neither Jones's response nor his unauthorized sue-reply offered anything to rebut the Defendants' assertion or to demonstrate that it was a mere pretext.  Thus, Jones has failed to identify specific facts showing that there is a genuine issue for trial as to this issue.

## B. Jones failed to demonstrate an adverse employment action regarding the allegedly harassing email Dr. Davis sent him and failed to rebut Davis's explanation.

Jones alleged in his complaint that Dr. Davis harassed him in "numerous forms."  (Doc. 1, at 6).  However, at his deposition, he identified only a single email, sent by Dr. Davis on August 21, 2019, that he claims was harassing.  That email, in its entirety, reads as follows:

> Good morning.  I noticed yesterday that you were spending time in
> the PASS room while a teacher was in the alternative school room.
> This is a reminder that, with the exception of your planning time, you
> should remain in the alternative school room.  Let me know if you
> have any questions.  Thank you.

(Doc. 18-1, at 97).   In his affidavit, Dr. Davis asserted that the email was not intended to harass Jones, nor was it related to his age or race.   Rather, he said, it was a job-related concern.

Jones's responses do not address this email at all.   Thus, he has failed to point to any evidence rebutting Dr. Davis's explanation or demonstrating that it was a mere pretext for a discriminatory motive.

The Court notes that, at his deposition, Jones could not clearly articulate why this email constituted harassment and intimidation.   Rather, he stated that he showed the email to another teacher who told him that Dr. Davis "was absolutely wrong, you were doing what you were supposed to do."   (Plaintiff's deposition, at 158-59).   This testimony, even if it had been referenced by Jones in his response, in no way demonstrates that Dr. Davis's explanation was a mere pretext for discriminatory motives.   Further, Jones points to no adverse employment action stemming from this email.   Accordingly, he has failed to demonstrate any factual dispute regarding this issue, and summary judgment is therefore due to be granted.

### C. Jones failed to point to any evidence demonstrating that his schedule change was related to a discriminatory motive or that it constituted an adverse employment action.

Jones next claimed that he was discriminated against when his schedule was changed from approximately 7:00 am-2:30 pm to approximately 7:15am-3:30 pm. In his affidavit, Dr. Davis explained that this change was because of the

aforementioned transfer.  When Jones was transferred to the high school, his schedule was slightly modified so that it aligned with the students' schedules.  The Court finds this to be a legitimate, nondiscriminatory explanation.  As noted above, Jones did not offer any rebuttal to this assertion in his responses that would call this into question in any way.  Additionally, Jones has not pointed to any evidence that this change in schedule had any tangible effect on his employment.  Therefore, he has not shown any factual dispute as to whether it constituted an adverse employment action.  Accordingly, Jones has failed to identify a dispute of material fact that would defeat summary judgment on this claim.

### D. Jones's claims regarding harm that his students experienced, unfounded complaints about him from white parents, and alleged "deception in job description" are unsupported by the record.

Jones alleged in his complaint that certain students were "subjected to academic harm related directly to [him]."  (Doc. 1, at 6).  Although Jones did not elaborate on this in his complaint, he explained at his deposition that he believes some students were harmed by being placed in virtual classes as opposed to being physically at the school.  The Court notes that no student is a party to this case, so it is unclear how any alleged harm to a student affected Jones's employment.  Nevertheless, Jones did not explain how those students' alleged academic harm was related to the school's or Dr. Davis's alleged discriminatory or retaliatory motives.  It follows that there would be no adverse employment action related to

that allegation.  Thus, even if there were some connection, Jones has failed to carry his burden of demonstrating a *prima facie* case of discrimination.

Additionally, Jones did not rebut the Defendants' proffered reasoning for placing students in virtual classes.  In his affidavit, Dr. Davis explained that certain students were placed in virtual classes to allow those who had committed serious disciplinary infractions to continue their education instead of being expelled and totally cut off from school.  Dr. Davis also denied that the decision to place any student in virtual classes was related to Jones, Jones's race, or Jones's age.  The Court finds this to be a legitimate, nondiscriminatory reason and again notes that Jones offered nothing in response to this proffered reasoning that would demonstrate Davis's explanation was a mere pretext.  Accordingly, summary judgment is proper as to this claim.

As to the alleged complaints from white parents or white students, Jones admits in his deposition that he was never disciplined for anything related to such complaints.   (Plaintiff's deposition, at 260).   Accordingly, he has failed to demonstrate that he suffered any adverse employment action as a result of these complaints.  Therefore, summary judgment is due to be granted as to this claim as well.

Jones next alleged that the Defendants engaged in "deception in job description" and "violations of the terms of the position [he] received in May

2017."   As with the previous claim, Jones did not provide much detail in his complaint.   However, at his deposition, he appears to reference a change in his duties that occurred after he was transferred from the central office to the high school.   Specifically, he claims that at some point, the duties of Attendance Clerk were removed, and his supervisor changed from the Superintendent to the high school principal.

This claim appears to be somewhat related to Jones's claim regarding his transfer.   In his affidavit, Dr. Davis explained that after Jones was transferred to the high school, it made no sense to have him supervised by the Superintendent because he was now in a different location.   Rather, he was supervised by the senior administrator in the same building, i.e., the principal.   Similarly, because Jones was no longer physically located at the central office, it no longer made sense for him to continue his Attendance Clerk duties.   However, his pay was not reduced as a result of this change.

At his deposition, Jones gave a confusing explanation for how he believed the results of his transfer and change in job description demonstrated institutional racism.   (Plaintiff's deposition, at 237-245).   However, as with his other claims, Jones has failed to point to any specific evidence in his response that would rebut the legitimate, nondiscriminatory reasons given by the Defendants.   And, as with his claim regarding the transfer discussed above, Jones has shown no adverse

employment action as a result of this change in duties. Accordingly, he has demonstrated no genuine factual disputes that could be resolved by a jury, and summary judgment is therefore appropriate as to these claims.

### E. Jones failed to point to any evidence that would rebut the Defendants' explanation for why he was not chosen to teach summer school, Friday school, or Saturday school.

Jones next alleged that he was discriminated against and lost extra income by not being selected to teach summer school, Friday school, or Saturday school. Similar to his other claims, Jones's complaint is short on detail regarding these allegations. However, the gist of his claims is that he was not selected to teach these extra programs based on his race, age, and/or in retaliation for complaining about such treatment in the past. Jones claimed that a younger white female was given a summer school teaching position instead of him.

In Dr. Davis's affidavit, he explained that Friday school was used as an after-school detention for elementary students who committed certain disciplinary infractions. (Doc. 18-3, at 11). Saturday school was a similar program for high school students. *Id.* According to Dr. Davis, teachers assigned to these programs, including Jones in the past, were given supplemental assignments that were not part of any job description. However, the elementary school principal discontinued Friday school in 2019, and no in-person school was held during much of 2020 due to the COVID pandemic. Dr. Davis asserted that when it was resumed in the 2021-

22 school year, he decided to use it to help students with their course work as opposed to it being a mere detention.   Therefore, Dr. Davis said, he wanted an elementary school teacher who was familiar with that curriculum.  *Id.*  Since Jones was not an elementary school teacher, he was not given the assignment.

Dr. Davis testified that Saturday school was discontinued in 2019 because of low attendance and cost concerns and was only held sparingly during 2021-22.  Dr. Davis asserted that, "to the extent it was held, Chauncey Jones was given an opportunity to serve."  *Id*. at 12.  Jones offered nothing in his response to show that these proffered reasons were pretextual.

As to the issue of summer school, Dr. Davis stated that the Board posted a position announcement on its website around May 4, 2021.  (Doc. 18-3, at 7). Teachers were selected by May 17, 2021, and contracts were executed by May 26, 2021.  Dr. Davis asserted that Jones did not respond to the job positing until two days before the classes were to begin on June 7, 2021.  *Id.*  By that time, Dr. Davis said, teachers had already been selected and contracts had already been executed. As to the white female Jones claims was hired in his place, Dr. Davis asserted that she was actually a teacher's aide who was hired by a staffing agency and that it was not the Board's practice to hire certified teachers, like Jones, as teachers' aides.   *Id.*   According to Dr. Davis, race, age, and previous discrimination complaints played no part in the selection of teachers to fill these roles.  *Id.*

24

The Court finds these to be legitimate, nondiscriminatory reasons for not selecting Jones to teach Friday school, Saturday school, and summer school.  As with his other claims, Jones failed to substantively respond to the Defendants' purported reasons.  Therefore, he has not carried his burden to demonstrate a factual dispute as to whether these reasons are a mere pretext.  Accordingly, summary judgment is therefore due to be granted.

Jones makes other vague allegations of discrimination in his complaint.  For example, he claims that his professional credentials are being devalued and unappreciated because of discrimination.  He also makes other ill-explained allegations of institutional racism and how he believes it has negatively affected him and other African Americans.  However, he has pointed to no actual evidence that any of it is so.  Having read his complaint, its attachments, and his deposition, it appears that Jones has merely surmised from conversations with various co-workers over the years that there are racist and agist motives behind many of the things he finds objectionable in the school system's political environment.  However, he has not articulated any specific facts to buttress his allegations.

The Defendants have provided specific, articulable reasons for every action or inaction that Jones claims is based on discrimination or retaliation, and Jones has not substantively responded to any of them.  Rather, he merely claims that they are false and misleading.  This type of conjecture is not sufficient to defeat a

motion for summary judgment. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion.").

IV.   **Conclusion**

For the foregoing reasons, the Court finds that there are no genuine issues of material fact remaining for trial.   Accordingly, the Defendants' motion for summary judgment (Doc. 17) is **GRANTED**, and this case is **DISMISSED WITH PREJUDICE**.   Further, the Defendants' motion to strike (Doc. 25) is **MOOT**.   A separate final judgment will be entered.

**DONE** and **ORDERED** March 27, 2023.

_____

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE